UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE CRAMER, an individual,<br><br>         Plaintiff,<br><br>v.<br><br>STANDARD LIFE INSURANCE CO. OF AMERICA; POINT LOMA NAZARENE UNIVERSITY,<br><br>         Defendants. | Case No.:  3:25-cv-00384-GPC-DEB<br><br>**ORDER DENYING DEFENDANT POINT LOMA NAZARENE UNIVERSITY'S MOTION TO DISMISS**<br><br>**[ECF No. 8]** |

  Plaintiff has filed a complaint alleging a fiduciary breach cause of action under ERISA, claiming that Defendants Point Loma Nazarene University and Standard Life Insurance Company of America violated their duties as fiduciaries towards her late husband and herself.  Based on the complaint, the briefing, and for the following reasons, the Court DENIES Defendant Point Loma Nazarene University's motion to dismiss.

## FACTUAL BACKGROUND

  Plaintiff Janice Cramer's late husband, Andrew Cramer, was an employee of Defendant Point Loma Nazarene University ("PLNU") starting in August 2021.  ECF No.

1 ("Compl.") ¶ 9. At an unstated date between August 2022 and January 2023, Mr. Cramer's employment ended, and Mr. Cramer passed away in January 2023. *Id.* ¶¶ 12-13.

In January 2022, while employed with PLNU, Mr. Cramer elected to become insured under a group life insurance policy ("the Plan"), with the group number 503121-X, issued by Standard Insurance Company ("Standard") to PLNU employees. *Id.* ¶¶ 4, 11. The policy is regulated by ERISA. *Id.* ¶ 3. The complaint alleges that at all times between January 2022 and the onset of his medical leave in August 2022 and subsequent termination of his employment, PLNU paid to Standard all premiums necessary to maintain Mr. Cramer's basic life insurance coverage, and Mr. Cramer paid to Standard all premiums necessary to maintain his supplemental life insurance under the Plan. *Id.* ¶ 11. Mr. Cramer did not convert his group life insurance coverage to an individual policy and thus did not maintain coverage after his employment ended, meaning he had no coverage when he passed away. *Id.* ¶¶ 14-15.

In January 2023, shortly after Mr. Cramer's passing, Plaintiff emailed Samara Timms, Defendant PLNU's Chief Human Resources Officer, asking if she was eligible to receive any benefits based on Mr. Cramer's employment. ECF No. 1-3 at 2. Another PLNU representative from the Human Resources Office responded, stating that she was "not aware of any benefits at this time," but that Samara Timms would respond when she was back in the office. ECF No. 1-3 at 3. Plaintiff again emailed Timms in November 2024, saying that she "recently found PLNU papers mentioning life insurance that [her] late husband, Andrew Cramer, would have had as a benefit," and that she wanted a copy of the group life insurance policy. ECF No.1-4 at 2. Timms responded to Plaintiff, stating that the policy was only in place for while Mr. Cramer was working at PLNU, and that the records showed he passed away after his employment ended. *Id.* Timms emailed Plaintiff a copy of the policy on November 6, 2024, and on November 22, 2024, Plaintiff

emailed Mrs. Timms expressing her intent to pursue a legal claim against Defendant PLNU. ECF No. 1-4 at 3-4. Plaintiff did not make an administrative claim for life insurance benefits before filing the present suit. *See generally* Compl.

Plaintiff alleges that PLNU breached its fiduciary duties to Mr. Cramer by failing to provide him notice of conversion rights or offer waiver of life insurance premiums. ECF No. 1 ¶ 25. She alleges a claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1104(a), an ERISA statutory provision, and seeks legal and equitable relief under 29 U.S.C. §1132(a). *Id.* ¶ 26-30.

## PROCEDURAL HISTORY

On February 21, 2025, Plaintiff filed this instant action against Defendants PLNU and Standard Life Insurance Company of America ("Standard"). ECF No. 1 ("Complaint" or "Compl."). On April 14, 2025, Defendant PLNU filed a motion to dismiss. ECF No. 8 ("Motion" or "Mot."). On April 14, 2025, Standard filed its Answer to the Complaint. ECF No. 9. On April 23, 2025, Plaintiff filed an opposition to Defendant's motion to dismiss. ECF No. 12 ("Opposition" or "Opp."). On May 2, 2025, Standard filed its notice of non-opposition to Defendant PLNU's motion to dismiss. ECF No. 15. On May 9, 2025, Defendant PLNU filed a reply to Plaintiff's opposition. ECF No. 16 ("Reply").

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint and whether it has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains factual matter that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## REQUEST FOR JUDICIAL NOTICE

PLNU seeks judicial notice of two exhibits: a copy of Standard Insurance Company's group life insurance policy, policy number 503121-X (Ex. A) and a copy of the "Summary Plan Description," which describes PLNU's employee benefit plan (Ex. B). ECF No. 8-2, Request for Judicial Notice ("RJN").

Generally, on a motion to dismiss, courts will limit their review to the contents of the complaint and may only consider extrinsic evidence that is properly presented as part of the complaint. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

All exhibits are relevant to the instant case and their accuracy is not questioned, so the Court may take judicial notice of them "without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689 (quotations and citations omitted). Furthermore, Plaintiff references the insurance policy (Ex. A) in her Complaint, Compl.

¶¶ 3,4, and also the "welfare benefit plan," which is described in the Summary Plan Description (Ex. B), *id*. ¶ 3. The terms of the insurance policy are not in dispute by the parties. *See generally* Compl. The Court therefore takes judicial notice of the insurance policy and the Summary Plan Description.

## DISCUSSION

PLNU argues in its Motion that Cramer's complaint fails "because she seeks remedies under an ERISA life insurance plan but has not exhausted the plan's internal administrative remedies." Mot. at 2. However, the requirement of administrative exhaustion does not apply to Plaintiff's breach of fiduciary claim and the Court therefore **DENIES** the motion to dismiss.

### I. Exhaustion of administrative remedies

Under ERISA Section 502(a)(1)(B), a participant or beneficiary may bring a claim "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In other words, <u>a benefits claim</u>. Under Section 502(a)(3), a participant or beneficiary may bring a claim "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). These claims sound in <u>breach of fiduciary duty</u>.

To pursue a benefits claim, "[a]s a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Barboza v. Cal. Ass'n of Pro. Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011). This is not explicitly stated in the statute, but has been understood as arising out of ERISA's structure and purpose. *See* 29 U.S.C. § 1133 (ERISA-governed employee benefit plans must establish and maintain procedures for resolving disputes involving a participant's benefits under

the plan). This exhaustion requirement "serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise." *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995). Thus, a claimant must first "avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Id.*

It is true, as PLNU points out, that Plaintiff did not allege anywhere in the Complaint that she made, or attempted to make, a claim to Standard. *See generally* Compl. Neither do her conversations with PLNU Chief Human Resources Officer Samara Timms constitute a constructive claim for benefits. *See id.* ECF No.1-3. Consequently, under the administrative exhaustion requirement, Plaintiff would be barred from pursuing a § 1132(a)(1)(B) benefits claim in federal court. *Diaz*, 50 F.3d at 1483.

However, Plaintiff claims to bring a <u>breach of fiduciary duty</u> claim against PLNU, Compl. ¶¶ 23, 25, and apparently does so under § 1132(a)(3), *see id.* ¶ 28 ("Plaintiff is entitled to relief pursuant to 29 U.S.C § 1132(a)"); Reply at 2 (Plaintiff's statutory claim "would be based on 29 U.S.C. section 1132(a)(3)"). The exhaustion requirement applies to benefits claims, but not to fiduciary breach claims, because the latter allege a violation of ERISA, rather than a violation of a retirement plan. *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 n.1. (9th Cir. 1991), *overruled on other grounds as recognized by Pac. Shores Hosp. v. United Behav. Health*, 764 F.3d 1030, 1041 (9th Cir. 2014); *accord Fujikawa v. Gushiken*, 823 F.2d 1341, 1345 (9th Cir. 1987) (no exhaustion requirement for plaintiffs "suing for violation of an ERISA statutory provision").

In her complaint, Plaintiff makes a single claim of a breach of fiduciary duty: "It was the Fiduciary Duty of Nazarene University, and/or Standard Insurance Company, to affirmatively provide Mr. Cramer with full and complete information as to his right to

convert his life insurance coverages." Compl. ¶ 14. Plaintiff alleges that Defendants owed Mr. Cramer and Plaintiff the duties prescribed under ERISA, including those in 29 U.S.C. § 1104(a), and that Defendants failed to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent fiduciary acting in a like capacity and familiar with such matters would use…" Compl. ¶ 26.

Specifically, Plaintiff alleges that Defendants breached their fiduciary duty by failing to provide timely notice to Mr. Cramer of his right to convert following termination of coverage; failing to pay life insurance benefits despite accepting premiums up until Mr. Cramer's death; and failing to provide Mr. Cramer or Plaintiff with conversion or portability rights under the Plan. Compl. ¶ 25.

The first and third theories of breach are clearly allegations that fiduciary duty was breached. No administrative exhaustion is required for those. However, the second theory – that Defendant failed to pay life insurance benefits despite accepting premiums up until Mr. Cramer's death – appears more to be a disguised benefits claim.[1] PLNU argues that Plaintiff has "merely disguise[d] a benefits claim as a fiduciary breach" because "the gravamen" of her "sole cause of action is her claim for life insurance benefits." Mot. at 2-3. It is true that Plaintiff's sought-out relief is in the form of the benefit payment that she alleges she should have received pursuant to her husband's policy. Compl. ¶ 25(b) (alleging fiduciary breach by "failing to pay life insurance benefits"); *id.* ¶ 27 (claiming damages "for loss of life insurance benefits"); *id.* ¶ at 10 (seeking "payment of the life

---

[1] This is apparently in contradiction with the Complaint itself, *see* Compl. ¶ 11 (stating that premiums were paid until the onset of Mr. Cramer's medical leave and subsequent termination, *not* his death), and directly in contradiction with the Plan, which states that life insurance ends "automatically" on the date of termination of employment, *see* Ex. A at 18.

insurance benefits due to Plaintiff… or… surcharge in the amount equal to the life insurance benefits under the Plan").

But this is not fatal to Plaintiff's claim. Plaintiff can seek equitable relief under ¶ 1132(a)(3) in the form of surcharge. *Castillo*, 970 F.3d at 1229. Surcharge is "monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011). The Supreme Court in *Amara* held that surcharge, which could be a "make-whole relief," would be "appropriate equitable relief" against a fiduciary under § 1132(a)(3). *Id.; see Ehrlich v. Hartford Life & Accident Ins. Co.*, 2021 WL 4472845, at *4 (N.D. Cal. May 7, 2021) ("the fact that Plaintiff seeks a monetary form of equitable relief does not invalidate his Section 502(a)(3) claim"). Thus, even if Plaintiff is seeking to be made whole here, in the form of a monetary sum equal to the benefits she would have received, this does not automatically convert her fiduciary breach claim into a benefits claim.

Additionally, the fact that she seeks individualized relief is also not fatal. Section 1132(a)(3) "authorize[s] ERISA plan beneficiaries to bring a lawsuit… that seeks <u>relief for individual beneficiaries</u> harmed by an administrator's breach of fiduciary obligation." *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 492 (1996)) (emphasis added). While the Ninth Circuit in *Horan* declared that "[a]n individual beneficiary may bring a fiduciary breach claim, but must do so for the benefit of the plan," 947 F.2d at 1417, the Supreme Court in *Varity Corp.* made clear that § 1132(a)(3) is "broad enough to cover individual relief for breach of a fiduciary obligation," 516 U.S. at 510. The Ninth Circuit in *Horan* cited *Mass. Mutual Life Ins. v. Russell*, 473 U.S. 134, 144 (1985) for its analysis; the Supreme Court in *Varity Corp.* "reexamined" *Russell* and held that it did not apply to the § 1132(a)(3) claim before it because *Russell* discussed a *different* provision, § 1132(a)(2). 516 U.S. at 509-10.

The cases cited by PLNU do not offer much support for its claim that Plaintiff is proceeding on a disguised benefits claim. All three of the cases deal with plaintiffs bringing both a benefits claim and a fiduciary claim. *See Ehrlich*, 2021 WL 4472845, at *4 ("the surcharge remedy sought by Plaintiff here is necessarily duplicative of his remedy under Section 502(a)(1)(B)"); *Biggar v. Prudential Ins. Co. of Am.*, 274 F. Supp. 3d 954, 971 (N.D. Cal. 2017) ("Biggar's section 1132(a)(3) claim duplicates his benefits claim under section 1132(a)(1)(B)"); *Western v. Unum Life Ins. Co. of Am.*, 2018 WL 6071090, at *14 (C.D. Cal. July 3, 2018) ("Plaintiff's claim for breach of fiduciary duty is virtually identical to his Section 502(a)(1)(B) claim"). These cases rest on the duplicative nature of bringing both claims when a remedy was available through the benefit claim under § 1131(a)(1)(B). *See Ehrlich*, 2021 WL 4472845, at *3 ("a claimant may not bring a claim for denial of benefits under [Section 502](a)(3) when a claim under [Section 502](a)(1)(B) will afford adequate relief") (citing *Castillo*, 970 F.3d at 1229).

Here, Plaintiff does not bring a § 1132(a)(1)(B) claim, precisely because it does not provide any adequate relief for her. That avenue is wholly closed off to her because she is *not* part of any plan that she can recover benefits from or enforce rights under. *See Varity Corp.*, 516 U.S. at 15 ("plaintiffs in this case could not proceed" under section 1132(a)(1)(B) because "they had no benefits due them under the terms of the plan") (cleaned up). She must rely on § 1132(a)(3) because otherwise she would "have no remedy at all." *Id.* As such, there is no duplicative claim being made here.

Regardless, given that Plaintiff has put forth two viable theories of breach, the Court finds that Plaintiff has pled enough to allege a breach of fiduciary duty that is plausible on its face.

Finally, PLNU attempts to bring in novel arguments in its Reply, namely that there was no existing fiduciary duty that PLNU breached, and that Plaintiff failed to plead that the alleged breach was the "but for" cause of Mr. Cramer not signing up for life

insurance. Reply at 7-9. However, "[t]e district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). The Court does not consider these new arguments which Plaintiff has not had an opportunity to address.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's motion to dismiss the complaint.

**IT IS SO ORDERED.**

Dated: May 27, 2025

Hon. Gonzalo P. Curiel
United States District Judge